Thank you. I'm Lamar Peckham, and I'm representing Petitioner José Guadalupe Torres-Valdivias. I am going to simply start where this case started. It's an adjustment of status case under Immigration and Nationality Act, Section 245A. And I just want to read that because we really haven't set it forth in any of the briefs. The status of an alien who was inspected, admitted, or paroled in the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General in his discretion and under such regulations as he may prescribe to that of an alien lawfully admitted for permanent residence. The other statutory eligibility requirements, there's no argument about them. But this is – I think it's very important to look at this and see that his discretion must be under such regulations as he may prescribe. I think that in this case there isn't any question about jurisdiction because the issue is that there is a legal standard for the burden of proof in this case, but is it the one that the government applied? Did they apply the correct standard of proof and burden of proof? If the I.J. used the right standard, then would you agree that we don't have jurisdiction to review the discretionary decision? Yes. So that then takes us to whether the I.J. was within his rights to use matter of gene. Yes. Okay. Why was he wrong in using matter of gene? If I might. I think that's exactly the point I was going to get to next. So the question really is what did matter of gene mean? What was the Attorney General saying? And what did the agency do with the Attorney General's decision in that case? Now, the standard of – for exercise of discretion that we're discussing in this case, I know everyone knows it quite well, is whether there's exceptional, extremely unusual hardship to a qualifying relative. Well, he has a qualifying relative. The Board of Immigration Appeals and the immigration judge, they – their interpretation of matter of gene is that in every adjustment of status of case where the applicant was convicted of a violent or dangerous crime, that standard applies. They're saying that's what matter of gene said. But the agency took matter of gene and they adopted a regulation that they saw incorporating what the Attorney General intended in matter of gene and, not only that, but expanding the scope of it because the Attorney General was referring only to refugee societies and their adjustment of status. The agency, in their regulation-making process, expanded the scope of that so that it applied to every kind of adjustment of status, but only where the applicant required a 212H waiver. So, if the BIA and the immigration judge are right about what matter of gene means, really the regulation is pointless. Why is there a regulation? Matter of gene covers everything, so what's the point of incorporating it into a regulation? Is it unusual? I mean, there are lots of doctrines that first start with the common law and then make them – make their way into code. Well, that – I don't – I don't disagree with that. I wouldn't argue with you on that, Your Honor. But the – this standard of proof for hardship, first of all, in virtually every case it's been – exceptional, extremely unusual hardship has been a statutorily defined or prescribed standard of hardship. It's not a common law type hardship, not like extreme hardship, which has many cases that refer to that without any necessarily – and before there was any regulation or statute in that regard. But this case, that standard is only statutory or regulatory. The agency could easily, if they thought that it should apply to all cases, whether there's a 212H waiver required or not, they could have easily made that regulation. There's nothing that would stop them from doing that. But it appears that what they were doing was attempting to incorporate the meaning of matter of gene into regulations with a slightly broader scope. But – and so if they're – but if they – and so if they're right, if they're right, if they're right that that's what matter of gene means, then this standard of proof applies only to 212H waiver cases. So – and I think this – this, to me, this particular case is just at the extreme limit of what the government might hope to achieve by expanding this – this waiver and the use of this waiver in adjustment of status cases. Because, I mean, we're not going to have an argument about whether it's a crime involving moral turpitude. Everybody agrees with that. But it was a misdemeanor. It was – the punishment was essentially zero except for – pardon me – except for probation and maybe a fine. There was – so in the mind of the sentencing court, this was a very minor offense, which is exactly the kind of offense that the petty offense exception to inadmissibility for criminal aliens and criminal admissibilities, exactly why it – why it applies, exactly what it's used for. It's used to eliminate the inadmissibility of aliens who have very petty misdemeanor offenses. It's measured in a very calculated way by – by looking at the sentence, the maximum possible sentence and the sentence the defendant, the criminal defendant, received. So it's – it's very specific. It's – it seems tailor-made to the conviction we have here. So applying this standard that was – that was taken from matter of gene, I mean, how exactly does that regulation apply to adjustment under 248? Well, I think it does in a way apply. The attorney general or the agency has adopted a regulation that applies to adjustment of status cases but only where there's a 212H waiver required. So by negative implication, all other cases are not to be – not to be subject to that standard of – standard of – excuse me. So then moving on a little bit, unless the Court has – has questions about that, the issue of what kind of – how should the crime be categorized? Should categorical analysis be applied to it? I really don't think there is a case that answers that specifically in this context. But when you look at what the agency or what the government is saying, what are they saying? They're saying, okay, yes, anytime there's a violent or dangerous crime, we're going to apply this high standard. But in the government's brief, page 22, unlike determining whether a crime is an aggravated felony, the agency's determination that a crime is violent or dangerous is not tied to any specific definition of those terms. And there isn't any definition anywhere of those terms. And I might also point out that sometimes the term violent or dangerous crime is used and sometimes violent or dangerous criminal is used, again, muddying the water about what that means. The government doesn't want, in this case especially, to use categorical analysis because if they did, it would not – this crime would not be a violent – considered a violent crime under 8 U.S.C. 16a and b. It just would not be. So they don't want it tied to any specific definition because if they – if it is, they lose. What they really want is to have unfettered, untethered discretion to which no standard applies except the ad hoc determination of the immigration judge, which is actually what – exactly what happened in this case. The judge just said, well, okay, I think it's a dangerous – violent or dangerous crime. Now, he didn't refer to any – he didn't refer to any cases that specifically said that this crime is a violent crime. He didn't apply any of the legal standards. He just said it was. And also I'd like to point out that even though matter of gene refers to things that appear to be outside the record to determine whether the crime there was a crime of violence, in fact, they refer to the plea colloquy of the defendant in that case and say and recount some of the things she said about her offense. So I think it's very unclear as to how many of the facts and the factual elements that were – that the Court looked at in that case were actually outside the record. I don't think there's any indication in matter of gene that they actually considered anything that was outside the record. So at – yeah. Well, anyway. I don't want to belabor that point. What's the legal issue here? You've acknowledged at the beginning we've got an argument over the standard, but if the IJ properly identified the standard, do we have jurisdiction to consider anything else, whether or not in our judgment it was violent or dangerous? Well, that – this is, of course, a separate argument in my brief, that there has to be a standard. If there's not a standard for determining what's violent or dangerous other than the ad hoc determination of the immigration judge, then my client's right to due process under the law has been violated. I mean, how can he – how can he defend or put his position forth if he has nothing to say because the judge can, under any standard that he determines, without even saying what it is, he could determine it's a violent or dangerous crime. And you appeal to the BIA and say it's not violent. Maybe the BIA's standard is they know it when they see it. How does that make a due process violation? Well, that's really – that's as far as I can go in that argument. That's what I have to say about it. I'm sorry, Your Honor. But I think really, coming back to it, the issue is what did Matter of Gene mean? Did it mean what the government says it means? Did it mean what the agency said it means? And with that, Your Honors, I'll reserve any time I have for rebuttal, if I might. Thank you, Mr. Taffer. Good morning. Hey, police court. My name is Gary Newkirk. I'm here on behalf of the Attorney General. Your Honors, I think the real issue here is nothing prevented the agency, the immigration judge, the board, from applying Matter of Gene to this discretionary determination. And I'll reiterate the argument in our brief. I mean, I don't believe that the Court has jurisdiction over any part of this case in terms of to the extent that it involves a discretionary determination made by the Attorney General and his delegates. The Court is aware, and I'm sure my esteemed colleague is aware, that the Court grants the Court has acknowledged that the Attorney General has relatively unfettered discretion in deciding who will remain in the United States or who will not. And I think that's really what we have here. I think if the immigration judge had said, in light of the serious nature of the crime and a lack of outstanding equities counterbalancing that serious nature of the crime, I'm going to deny 245i adjustment, I'm not sure we'd really be here. I think that they did want to put a framework to this, and there is a framework that they can And we have jurisdiction over the framework. That is what the legal standards are. Right. I think this Court has construed that aspect of it. But I would be remiss if I didn't reiterate that argument. We understand the Department is not entirely on board with Ninth Circuit case law, but so be it. Only in this. But anyway, I think that so there is no regulations that require the immigration judge to apply this standard. We do have a matter of gene that did, that is entitled to Chevron deference. It's a published opinion from the Attorney General. And that carries significant weight with the Court and has in the past. And the Court has, I'm not sure we cited it in our brief, but the Court has approved a matter of gene in the past. Well, I don't know if the challenge here isn't so much to matter of gene as to where it goes, how far that goes. Sure. Again, if my esteemed colleague focused on the language of the statute, we begin with the statute. We always do. It's may in his discretion. And I think the Court has acknowledged that that gives the Attorney General relatively unfettered discretion. I believe that's the language used in Mejia, which is cited in the government's brief. And that's what, that's what we did here, given the serious nature of the crime that the Petitioner was convicted of. And so on that basis, I think the agency properly applied the framework and then denied 245i adjustment in application of that framework. We have matter of gene, and then we have the application of it outside its specific  And that's the kind of case that matter of gene covered. Sure, sure. What would you point to in terms of published decisions by the Board with regard to application of matter of gene to this context? Or is there something published by the Board that speaks to it? I don't believe there is. I think that we have matter of gene and then we have matter of KA, which is cited in the government's brief. And that has some more expansive language and is applied in a, I believe it is the same context. I believe matter of KA involved a 209C refugee adjustment case, if I'm not mistaken. But you made reference to Chevron deference. Right. This case would be a lot easier for us to say Chevron applies if we had a published decision of the Board saying that matter of gene applies in this context. We don't have that. Right. So that's probably why we're here. Yes. That's why we're here. But nothing prevents the Attorney General from applying that framework. Mr. Peckham may not like that, but that's, I believe, the way it is. And that's why Congress, when they gave authority to the Attorney General to adjust the status of certain aliens, did so without any follow-up statutory language. And I believe that the, there's no, it's not a requirement for a reg to implement a framework for exercising the Attorney General's discretion. I think that's really, that's the argument that I would fall back on. There isn't one. And, yes, if we had a regulation, it would be certainly an easier case applying it in this context. But that's not a requirement. And in light of that, I mean, I think that's really the end of Petitioner's argument. As far as, well, if the panel doesn't have any additional questions on the application of the Gene framework, then I will just touch up on the, briefly on the other items. I would just say that as far as the categorical analysis goes, a matter of Gene, in a discretionary instance, the Attorney General is not bound by the sort of concerns that are inherent in an analysis of determining whether or not someone is removable from the United States. Here, removability has been conceded. It's not at issue. We are looking at a discretionary determination. We're weighing all of the factors. And some, some aspects are weighed more differently. And that's something that we, that we give the Attorney General discretion to do. So if the panel doesn't have any additional questions, we would rest on the briefs. Thank you, Mr. Newcombe. Mr. Newcombe, I think you had about three minutes left. Yes. Thank you very much. I think the issue of Chevron deference that counsel brought up is kind of interesting because, really, the agency has already interpreted the matter of Gene, and they've interpreted it in a way that is contrary to the position the government is taking  Also, I'd like to point out briefly that in Gene and K.A., both of those cases were serious crimes of violence, attempted robbery in K.A. and manslaughter in Gene. In both of those cases, the court, I don't think the court analyzed whether they were categorically crimes of violence or whether they were categorically aggravated felonies, but they just stated that they were aggravated felonies. So I really, I just do not believe there's any way that the government can get around the fact that the agency's already interpreted the matter of Gene and it does not do what the government says it does. And with that, I'll rest. Thank you very much. I appreciate it. Thank you, Mr. Packer. Mr. Newkirk, thank you as well. The case just argued is submitted.
judges: Watson, SILVERMAN, CLIFTON